UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASSOCIATION OF WOMEN WITH DISABILITIES ADVOCATING ACCESS SUING ON BEHALF OF DELORES JACKSON AND ITS MEMBERS; and DELORES JACKSON,<br><br>Plaintiff,<br><br>v.<br><br>MARCOS MOUET d.b.a. RANCHOS MERCADOS, LTD; DOUGLAS ELLEENE C. DOUGLAS REVOCABLE TRUST,<br><br>Defendants. | CASE NO. 06cv2240 JM(LSP)<br><br>ORDER AWARDING ATTORNEY'S FEES; IMPOSING SANCTIONS AGAINST PINNOCK & WAKEFIELD |

Defendant Marcos Mouet, d.b.a. Ranchos Mercados, Ltd., ("Mouet") moves for a determination of attorney's fees pursuant to this court's January 11, 2007 Order Granting Motion for Summary Judgment and Granting Motion for Attorney's Fees ("Order"). Plaintiffs and the law firm of Pinnock & Wakefield ("P & W") respond to this court's Order to Show Cause why Rule 11 sanctions should not be imposed. Plaintiffs oppose the award of attorney's fees. Defendant Mouet did not appear at the time of oral argument. For the reasons set forth below, the court awards attorney's fees in favor of Mouet and against P & W in the amount of $15,213. The court also finds that P & W violated Rule 11 by making pertinent allegations in the complaint without reasonable and competent inquiry. As a sanction, attorney Theodore Pinnock must complete four hours of ethics and professional responsibility continuing education classes approved by the State Bar of California. Mr. Pinnock is instructed to complete the courses within 120 days of entry of judgment. Upon

completion of the four hours of classes, Mr. Pinnock is instructed to file with the court a notice indicating that he has complied with the continuing education sanction.

**Attorney's Fees[1]**

On January 11, 2007 the court awarded attorney's fees in favor of Defendant Mouet and against Plaintiffs and P & W for making pertinent allegations without reasonable and competent inquiry. The court made the award of attorney's fees pursuant to its inherent authority, 42 U.S.C. §12205, 28 U.S.C. §1927, and Rule 11. This present matter concerns the reasonableness of the requested attorney's fees.

Counsel for Mouet seek an award of $38,514. Mitch Wallis, counsel for Mouet, explains that he associated with Edward J. Carnot, Esq. to defend against Plaintiff's claims. Mr. Wallis articulates that he associated with Mr. Carnot because, as a solo practitioner, he has no prior experience with class actions suits or complex civil litigation. (Wallis Decl. ¶7). Mr. Carnot, in turn, hired a first year associate, Laura Pennelle, to assist him in preparing the motions and responses. The following are the tasks and the requested amount of fees, expressed in hours:

- Initial client meeting, filing answer, initial settlement contact    2.5
- Preparing motion for summary judgment and further efforts to settle (Wallis 9, Carnot 18.5, Pennelle 39.5)    67
- Responding to proposed amended complaint (Wallis 2.17, Carnot 21.75, Pennelle 21.5)    45.42
- Reviewing Order, responding to motion for reconsideration, preparing fee request (Wallis 6, Carnot 9.75, Pennelle 23)    38.75

Mr. Wallis identifies that he has 16 years of experience and that the retainer agreement provides for payment at $300 per hour. Mr. Carnot represents that he has 35 years experience and that his normal billing rate is $395 per hour. Ms. Pennelle is a first year associate billed at $145 per hour. Counsel request a total of $38,514 in attorney's fees. They are not requesting any other non-taxable cost or fee.

In light of the issues confronted by Mouet, the court concludes that the hours requested are unreasonable. The primary issue confronted by Mouet on summary judgment dealt with whether

---

[1] The court incorporates its January 11, 2007 order as if fully set forth herein.

Ranchos Mercados was an operating business establishment open to the public. This fact was easily proved by Mouet and not disputed by Plaintiffs. The court notes that many of the issues addressed by Mouet in his motion for summary judgment drifted far afield from this issue. Further, the manner in which Wallis structured the attorney litigation team with three different attorneys seems to be less efficient than having only one or two attorneys knowledgeable in ADA litigation working on the case. Consequently, this structure appears to result in some duplication of efforts.

In light of the difficulty of the underlying issues and the skill required to litigate those issues, the court finds the following hours reasonable for the tasks identified by counsel, expressed in hours:

- Initial client meeting, filing answer, settlement contact (Wallis) 2.5
- Preparing motion for summary judgment and further efforts to settle (Wallis 5.4, Carnot 11.0, Pennelle 23.6)   40
- Responding to proposed amended complaint (Wallis .8, Carnot 7.6, Pennelle 7.6)   16
- Reviewing Order, responding to motion for reconsideration, preparing fee request (Wallis 1.9, Carnot 3.0, Pennelle 7.1)   12

The court also finds the $300 rate proposed by Mr. Wallis to be reasonable. This hourly rate reflects the agreed upon contractual rate between Mr. Wallis and Mr. Mouet. With respect to Mr. Carnot, the court limits the hourly rate to the contract rate specified in the retainer agreement, $300 per hour. The court also finds the $145 hourly rate for Ms. Pennelle to be reasonable under the circumstances. Applying these hourly rates to the above identified hours, the court awards total attorney's fees and non-taxable costs in the amount of $15,213.

In sum, the court awards attorney's fees in favor of Mouet and against P & W in the amount of $15,213, payable within thirty days of entry of judgment.[2]

**Rule 11**

Pursuant to Rule 11(b), the filing of the present complaint is a representation to the court that

> to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,--

---

[2] The court notes that it would consider a motion from either party for entry of partial judgment pursuant to Fed.R.Civ.P. 54(b).

1  ///

2  (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

3

4  (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

5

6  (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery;

7

8  Fed.R.Civ.P. 11(b). The imposition of sanctions are reserved "for the rare and exceptional case where

9  the action is clearly frivolous, legally unreasonable or without legal foundation." Operating Engineers

10  Pension Trust v. A-C Co., 859 F.2d 1336, 1344 (9th Cir. 1988). The Rule 11 certification

11  contemplates that the attorney presenting factual contentions has conducted a pre-filing examination

12  of the facts that is reasonable under the circumstances. See Zaldivar v. City of Los Angeles, 780 F.2d

13  823, 831 (9th Cir. 1986). This certification is designed to create an affirmative duty of investigation

14  both as to law and as to fact, and to deter frivolous actions and costly meritless maneuvers. Business

15  Guides, Inc. v. Chromatic Communications Enterprises, Inc., 498 U.S. 533, 550 (1991). Rule 11

16  sanctions may be imposed "as to a portion of the pleading even though it was not violated as to other

17  portions." Patterson v. Aiken, 841 F.2d 386, 387 (11th Cir. 1988).

18  On January 11, 2007 Plaintiffs and P & W were provided notice to show cause why they

19  should not be sanctioned under Rule 11 for commencing an action against Mouet and Ranchos

20  Mercados without having conducted a reasonable and competent inquiry. The court issued the OSC

21  because P & W made specific factual allegations as to architectural barriers located inside Ranchos

22  Mercados. Among other things, P & W alleged that the entrance door was too heavy, the interior path

23  of travel was less than 36", the restrooms failed to be accessible, the restroom did not have required

24  signage and the counters were too high and the counter did not have assistance signage. (Compl. ¶11).

25  Furthermore, Plaintiffs allege that they have photographic evidence of these non-existent conditions.

26  (Compl. ¶12). The difficulty with the allegations concerning the interior of Ranchos Mercados is that

27  the establishment has been closed to the public since December 2004 and not operating in commerce

28  since that time. The doors to the establishment are bordered and shuttered with plywood, (Court

Docket No. 13, Exh. 4), and the interior of the establishment does not contain any products for sale and is cluttered with construction materials and equipment. (Court Docket No. 13, Exh. 5). Moreover, Ranchos Mercados has never had a public restroom. (Mouet Decl. ¶4).

Rule 11 sanctions are appropriate where the pleading lacks evidentiary support or is not warranted by existing law. See Buster v. Greisen, 104 F.3d 1186, 1190 (9th Cir. 1997). Here, the court concludes that Plaintiff Jackson and P & W failed to make a reasonable inquiry under the circumstances. The above identified allegations dealing with the interior spaces of Ranchos Mercados are simply not credible for several reasons. See California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1472 (9th Cir. 1987) (reasonable inquiry requires attorneys to seek credible information rather than proceed on mere suspicion or supposition). First, the condition of Ranchos Mercados placed P & W on inquiry notice that the establishment was not a place of public accommodation operating in commerce. Not only was the establishment closed on a day when Ms. Jackson and Ms. Pinnock visited the establishment, (Jackson Decl. ¶12), but Ms. Pinnock declares that she looked through the window and saw, among other things, "large crates" in the interior of the building. (E. Pinnock Decl. ¶8). Ms. Pinnock and Ms. Jackson do not state that they observed any products for sale, customers, or any other indicia that Ranchos Mercados was a functioning business.[3] Furthermore, the allegations with respect to the weight of the entrance door, restrooms, restroom signage, counter top height, and interior path of travel lack a reasonable basis in fact. The establishment has never had public restrooms. Plaintiffs, in their briefing and declarations, focus primarily on the allegations concerning parking and exterior related conditions. With respect to these interior allegations, P & W does acknowledge that the allegations with respect to the restroom and entry door were in "error."[4] (Motion at p.14:23-25). P & W is under an ethical Rule 11 obligation to make only those allegations "likely to have evidentiary support after a

---

[3] The court notes that it is unclear when the front doors to Ranchos Mercados were boarded and shuttered. Plaintiffs declare that they did not observe shuttered front doors and the photographs submitted by them do not clearly show plywood covering the front doors, unlike the photographs submitted by Mouet. (T. Pinnock Decl., Exh. A).

[4] While acknowledging that the allegations were in "error," P & W fail to inform the court whether these allegations were merely "inadvertent," or the result of overly optimistic pleading. Regardless, the allegations lacked a reasoned basis.

- 5 -                                                                                           06cv2240

1 reasonable opportunity for further investigation and discovery." Fed.R.Civ.P. 11(b)(3). To 2 specifically allege that the restroom and restroom signage violate the ADA, when there is no reason 3 to believe that the establishment has a public restroom in the first instances, violates Rule 11. With 4 respect to counter top heights and the interior path of travel, Ms. Pinnock, for the first time, declares 5 that she looked through the windows of Ranchos Mercados, (E. Pinnock Decl. ¶7), and observed that 6 the interior path of travel was less then 36" in some areas and the counters were too high. (E. Pinnock 7 Decl. ¶5). She also declares that she observed large crates on the floor. Id. ¶8). The court notes that 8 Ms. Pinnock fails to identify how she determined, without any measurement, that the counters were 9 too high and how the vacant aisles and construction related equipment and materials resulted in an 10 interior path of travel less than 36". The court further notes that Ms. Jackson and Ms. Pinnock visited 11 the site on March 12, 2006, but that the action was not commenced until seven months later on 12 October 6, 2006. Plaintiffs fail to identify any time pressure that would have prevented them from 13 conducting further inquiry into the operations of Ranchos Mercados especially when they were placed 14 on notice that Ranchos Mercados was not open to the public.

15 P & W argues that it reasonably relied upon the observations of Ms. Jackson because, among 16 other things, it has a very trusting 18 month long relationship with Ms. Jackson, and she has 17 demonstrated meticulous record keeping. The court notes that Ms. Jackson was accompanied on her 18 "errands," (Jackson Decl. ¶4), by P & W employee Ms. Pinnock.[5] Ordinarily, counsel is entitled to 19 rely upon reasonable information supplied by the client. See Hendrix v. Naphtal, 971 F.2d 398, 400 20 (9th Cir. 1992). Here, however, Ms. Jackson was accompanied by an individual experienced in ADA 21 litigation, Ms. Pinnock. The direct involvement of a P & W employee in discovering, investigating, 22 and prosecuting the action significantly diminishes P & W's claim that it was merely relying on the 23 observations of a client.

24 P & W also argues that this court should require a higher mens rea standard, "akin to 25 contempt," because the court issued the OSC sua sponte and there is no 21 day safe harbor provision.[6] 26 See In re Pennie & Edmonds, LLP, 323 F.3d 86, 90-91 (2nd Cir. 2003). The court concludes that this

---

[5] Elizabeth Pinnock is the daughter, and not the spouse of, Theodore Pinnock.

[6] The court notes that P & W received a Rule 11 notice on or about October 31, 2006.

1 is not the standard to be applied under the circumstances because Rule 11 empowers the court to
2 impose sanctions "upon its own initiative." Fed.R.Civ.P. 11(c)(1)(B). Here, the court's January 11,
3 2007 Order specifically informed P & W of the specific conduct alleged to violate Rule 11 and
4 directed P & W to show cause why it should not be sanctioned. See Fed.R.Civ.P. 11(c)(1)(B); Hadges
5 v. Yonkers Racing Corp, 48 F.3d 1320, 1329 (2nd Cir. 1995). The court declines to adopt a higher
6 mens rea than that set forth in Rule 11.

7 In sum, the court concludes that P & W violated Rule 11. The only other issue concerns the
8 nature of sanctions. The court concludes that imposition of the sanction of continued ethics training
9 is appropriate under the circumstances. Mr. Theodore Pinnock is instructed to complete four hours
10 of ethics and professional responsibility continuing legal education classes approved by the State Bar
11 of California. Mr. Pinnock is instructed to complete the courses within 120 days of entry of judgment,
12 or entry of partial judgment should either Mouet or Plaintiffs move for such relief. Upon completion
13 of the four hours of classes, Mr. Pinnock is instructed to file with the court a notice indicating that he
14 has complied with the continuing education sanction.

15 In conclusion, the court awards attorney's fees in favor of Mouet and against the law firm of
16 P & W in the amount of $15,213. The court also imposes sanctions against the law firm of P & W and
17 requires Mr. Theodore Pinnock to complete four hours of ethics and professional responsibility
18 continuing legal education classes. The provider of the continuing education classes must be a MCLE
19 provider approved by the State Bar of California.

20 **IT IS SO ORDERED.**
21 DATED: March 23, 2007
22
23 Hon. Jeffrey T. Miller
United States District Judge
24 cc: All Parties